Edgar STROMFELD et ano., Plaintiffs,

v.

The GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC., et al.,
Defendants.

No. 79 Civ. 3476 (HFW).

United States District Court,
S. D. New York.

Feb. 21, 1980.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, by Ira B. Rose, Michael Dore, Ronald Levine, New York City, of counsel and Schwartzberg, Barnett & Cohen, Chicago, Ill., by Hugh J. Schwartzberg, Chicago, Ill., of counsel, for plaintiffs.

Cravath, Swaine & Moore, New York City, for defendants Tengelmann Warenhandelsgesellschaft, TN Delaware Inc., Erivan Karl Haub, Helga Haub, Henry W. Van Baalen, Dr. Jur. Wilfrid Vogt and Rosemarie Baumeister by Samuel C. Butler, Robert D. Joffe, David E. Massengill, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendants Dillon Read & Co., Jonathan L. Scott, David W. Morrow and Allan A. Feder by Thomas F. Curnin, Robert C. Meade, Jr., New York City, of counsel.

Windels, Marx, Davies & Ives, New York City, for defendant Rachel Carpenter by J. Daniel Mahoney, Barbara J. Schmidt, New York City, of counsel.

Whitman & Ranson, New York City, for defendants The John A. Hartford Foundation, Inc. and Leonard Dalsemer by P. M. O'Connor, Jr., Michael S. Press, New York City, of counsel.

Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for defendants The McIntosh Foundation and Michael A. McIntosh by Warren H. Colodner, Morton E. Grosz, Joel M. Gross, New York City, of counsel.

Dunnington, Bartholow & Miller, New York City, for defendants Josephine H. Bryce, The Bryce Foundation, The Mill River Stud Corp., The Marie Josephine Hartford Foundation and Walter G. Dunnington, Jr. by William M. Bradner, Jr., Steven E. Lewis, New York City, of counsel.

## OPINION

WERKER, District Judge.

This action was commenced by the plaintiffs Edgar Stromfeld and Sol Zisook against 22 defendants for alleged violations of sections 10(b), 13(d), 14(d), 18(a) and 20(a) and (b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m(d), 78n(d), 78r(a) and 78t(a) and (b), the rules and regulations promulgated thereunder, the statutory law of Maryland, and principles of common law. All of the defendants except the defendant Great Atlantic & Pacific Tea Company, Inc. (the "A&P")[1] move to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted and for failure to allege the circumstances constituting the purported fraud with sufficient particularity.

## FACTS

For purposes of this motion, the well-pleaded allegations of the complaint are taken as being true.

The defendant Tengelmann Warenhandelsgesellschaft ("Tengelmann"), a West German partnership, has successfully operated a chain of some 2,000 supermarkets in Europe for a number of years. As a result of this success, the Tengelmann defend-

---

1. A&P's obligation to answer the complaint was stayed by order of the Court pending resolution of the instant motion.

ants [2] decided to expand into the United States retail grocery market.

In 1978, representatives of the Tengelmann defendants met with representatives of the defendant John A. Hartford Foundation, Inc. (the "Hartford Foundation"), the owner of a substantial block of A&P common stock. This and other meetings were arranged by the defendant Dillon Read & Co., Inc. Because the Hartford Foundation did not own enough stock to meet the needs of the Tengelmann defendants, a selling group of individuals and foundations, holding some 42 per cent of A&P's common stock, was formed. All of the members of this selling group have been named as defendants herein.[3]

The complaint alleges that each member of the selling group beneficially held in excess of 5 per cent of the stock of A&P, and that through secret meetings and negotiations, the members of the group decided to increase their leverage by acting together to dispose of their stock. The complaint further alleges that the selling group was formed without public disclosure, without notice to the other A&P shareholders or A&P itself, and without the public filings required by law.

On January 16, 1979, pursuant to confidential negotiations between the selling group and the Tengelmann defendants, each of the sellers signed a separate sales agreement with TN Delaware Incorporated ("TN Delaware"), a Delaware corporation whose stock is owned by Tengelmann. The effect of these agreements was to transfer to TN Delaware 7,291,170 shares of A&P stock at $7.375 per share, approximately 30 per cent of A&P's common stock. TN Delaware also acquired options to purchase 3,124,787 additional shares at $7.50 per share plus an option price of $1,406,154.15. Thus, TN Delaware acquired the rights to 10,415,957 shares, approximately 42 per cent of the common stock, for a total consideration of $78,614,436, approximately $7.50 per share. The complaint alleges that a substantial portion of the purchase price was paid to the selling group as a premium for the sale of control of A&P.

The agreements were consummated on February 21, 1979, and TN Delaware acquired voting control of approximately 42 per cent of A&P's common stock.

The complaint alleges that the defendants filed intentionally false and misleading statements with the Securities and Exchange Commission; that these statements falsely stated that there was no selling group, that TN Delaware did not intend to make changes in management, and that the purchases were made for investment purposes only; and that these statements omitted and concealed the facts that the sellers were receiving a premium for the sale of control, that the sellers were acting under a conflict of interest, and that there had been secret negotiations. The complaint further alleges that all of the above-mentioned activities depressed the market price of A&P stock, and further, that the members of the selling group used their positions as controlling shareholders and officers of A&P to gain "inside" information and to divert such information to their own advantage. Finally, the complaint alleges that the defendants engaged in an illegal tender offer and that the members of the selling group breached their fiduciary duties to A&P and its minority shareholders.

The plaintiff Stromfeld is the holder of 100 shares of A&P stock, which he purchased in January 1979. The plaintiff Zisook purchased 200 shares of A&P stock in December 1978 and sold these shares in or about February and March of 1979. Both plaintiffs bring this action in their individu-

---

**2.** The Tengelmann defendants include Tengelmann, TN Delaware Incorporated, and the following officers and directors of TN Delaware: Erivan Karl Haub, Helga Haub, Henry W. Van Baalen and Dr. Jur. Wilfrid Vogt.

**3.** The following are also named as defendants in the complaint: Rachel C. Carpenter, Jose-

phine H. Bryce, The McIntosh Foundation, The Mill River Stud Corporation, The Marie Josephine Hartford Foundation, The Bryce Foundation, Leonard Dalsemer, Michael A. McIntosh, Walter C. Dunnington, Jr., Jonathan L. Scott, David W. Morrow, and Allan A. Feder.

al rights as well as on behalf of a class of all persons (and entities) who purchased or held A&P stock during the time in question. In addition, Stromfeld purports to bring this action derivatively on behalf of A&P.[4]

## DISCUSSION

### A. The Section 13 Claims

The first and second claims of the complaint arise from alleged violations of section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d),[5] and the third claim is based in part on such purported violations.[6]

The first claim alleges that the defendants failed to file statements reporting the formation of a selling group as required by section 13(d), and the second claim alleges that the defendants filed section 13(d) statements containing false and misleading declarations. Neither of these claims, in my opinion, states a cause of action under either section 13(d) itself or section 18(a).[7]

■ The plaintiffs have not challenged the defendants' contention that there is no implied cause of action for damages under section 13(d), nor could they. Judge Weinfeld addressed this issue in *Myers v. American Leisure Time Enterprises, Inc.*, 402 F.Supp. 213 (S.D.N.Y.1975), *aff'd without opinion*, 538 F.2d 312 (2d Cir. 1976), and held that no cause of action for damages could be implied under section 13(d). In a similar line of cases, the courts have consistently refused to imply a cause of action for damages under section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), which con-

tains reporting requirements analogous to those of section 13(d).[8] *See, e. g., In re Penn Central Securities Litigation*, 494 F.2d 528, 539–41 (3d Cir. 1974); *Rosengarten v. International Telephone & Telegraph Corp.*, 466 F.Supp. 817, 827 (S.D.N.Y.1979); *De-Witt v. American Stock Transfer Co.*, 433 F.Supp. 994, 1005 (S.D.N.Y.1977). The plaintiffs herein have no independent cause of action for damages under section 13(d).

■ Plaintiffs have also failed to challenge, with respect to the second claim of the complaint, the defendants' contention that actual reliance on false or misleading statements in a filing is an essential prerequisite to a section 18(a) claim for damages. The cases are clear that "[s]ection 18 requires that a plaintiff establish knowledge of and reliance upon the alleged misstatements contained in any document filed with the S.E.C." *Ross v. A. H. Robins Co.*, 607 F.2d 545, 552 (2d Cir. 1979); *see also Heit v. Weitzen*, 402 F.2d 909, 916 (2d Cir. 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). The plaintiffs have not alleged anywhere in the complaint that they bought or sold securities in reliance upon any statements contained in any S.E.C. filings.

With respect to the first claim of the complaint, plaintiffs argue that actual reliance need not be established to make out a section 18(a) cause of action since that claim alleges the failure to file rather than the filing of false or misleading statements. This argument, however, is unconvincing,

4. The class certification motion has been held in abeyance pending the outcome of this motion.

5. Section 13(d) provides in part: "Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered . . . , is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, [file certain statements with the issuer of the stock and the S.E.C.]." 15 U.S.C. § 78m(d).

6. *See* complaint ¶¶ 66–74; Plaintiffs' Mem. In Opp. To Motion, at 2. The third claim also alleges violations of section 10(b).

7. Section 18(a) provides in part: "Any person who shall make or cause to be made any statement in any application, report, or document filed [with the S.E.C.], which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance. . . . " 15 U.S.C. § 78r(a).

8. Section 13(a) requires issuers of stock to make certain filings with the S.E.C. 15 U.S.C. § 78m(a).

for section 18(a) expressly establishes liability for misleading statements. Section 18(a) neither mentions nor provides liability for the failure to file. Indeed, the section provides that in order to have standing to sue, a plaintiff must have bought or sold securities in reliance upon false or misleading statements contained in an S.E.C. filing. In *DeWitt v. American Stock Transfer Co., supra*, Judge Goettel rejected the plaintiff's section 18(a) claim in part because the wrong alleged was a failure to file rather than the making of a material misstatement. 433 F.Supp. at 1005. Since the first claim of the complaint is premised on a failure to file, that claim must be dismissed to the extent it seeks damages under section 18(a).

Notwithstanding the above, plaintiffs may not be completely foreclosed from seeking relief for alleged violations of section 13(d), for the second circuit has ruled that section 18 is not the exclusive remedy for plaintiffs aggrieved by S.E.C. filings containing false and misleading statements. In *Ross v. A. H. Robins Co., supra*, the second circuit held that a suit based on actions that would constitute a violation of section 18 could be maintained under section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. 607 F.2d at 556. Hence, the sufficiency of the 10(b) allegations must be examined.

### B. *The Section 10(b) Claims*

Section 10(b) and Rule 10b-5 proscribe the use of manipulation or deception in connection with the sale or purchase of securities. The third claim of the complaint alleges in part:

73. The acts, transactions and conduct of the defendants alleged herein violated section 10(b) of the Exchange Act and the rules and regulations promulgated thereunder.

74. As a result, the price of the stock of the corporation was artificially depressed and plaintiffs and other members of the class have been damaged in a sum not presently known to plaintiffs.

The fifth claim of the complaint is also based on section 10(b). That claim alleges in part:

81. The acts, conduct and transactions alleged herein constituted the illegal sale of control of the Corporation and the disposition of valuable corporate assets in return for the payment of a premium to individual shareholders.

82. As a result, plaintiffs and other members of the class have been damaged in a sum not presently known to plaintiffs.

Plaintiffs allege three grounds as possible bases for their section 10(b) claims: (1) the violations of section 13(d) as a result of defendants' failure to file 13(d) statements or their filing of false and misleading 13(d) statements; (2) the defendants' failure to disclose the sale and purchase of controlling stock at a premium price; and (3) the defendants' use of undisclosed material inside information.

It is clear the complaint fails to allege the circumstances underlying the fraud claims with the degree of particularity required by Fed.R.Civ.P. 9(b). As the second circuit recently held, "a plaintiff alleging fraud in connection with a securities transaction must specifically allege the acts or omissions upon which his claim rests." *Ross v. A. H. Robins Co.*, 607 F.2d at 557. A complaint charging violations of Rule 10b-5 must " 'allege with some specificity the statements allegedly constituting the fraud.' " *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972), *quoting Matheson v. White Weld & Co.*, 53 F.R.D. 450, 452 (S.D.N.Y. 1971).

The complaint herein rests on "mere conclusory allegations to the effect that defendant[s'] conduct was fraudulent or in violation of Rule 10b-5 . . . ." *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971). It fails to identify any specific documents which allegedly should have been filed or which were filed and contained false and misleading statements. Although paragraph 63 of the complaint purports to identify certain false and misleading statements, it does not specify in

which documents these alleged misstatements were contained. The complaint does not allege the dates on which the plaintiffs bought and sold their stock, nor does it specify the price of the stock at the time in question. The complaint also fails to specify when the alleged misrepresentations were made and when the defendants came into possession of inside information which should have been disclosed. *Compare Ross v. A. H. Robins Co.*, 607 F.2d at 558.

The complaint is also deficient with respect to the fraud allegations in that it does not distinguish one defendant from another. Consequently, "each defendant [has not been] apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 522 n. 7 (S.D.N.Y.1977). For example, the complaint contends that "the Hartford Defendants [used] their positions as controlling shareholders and officers of [A&P] and [used A&P's] resources to acquire information on prospective purchasers, tender offers, merger candidates, and similar information to divert such information to their own advantage." Complaint ¶ 65(c). The "Hartford Defendants," however, consist of a dozen foundations and individuals. *Id.* at ¶¶ 19–31. The complaint does not specify which of these 12 defendants used what information in breach of what obligations. Nor does the complaint state whether each of these defendants is being sued as a primary defendant or as an aider and abettor. *See Goldberg v. Meridor*, 81 F.R.D. 105, 111 (S.D.N.Y.1979); *In re Haven Industries, Inc. Securities Litigation*, 462 F.Supp. 172, 182–83 (S.D.N.Y.1978).

■ Because of the specificity requirements of Rule 9(b), the complaint in an action for fraud cannot be based on "information and belief" except as to matters peculiarly within the adverse parties' knowledge. As to these matters, the pleading party is required to set forth the facts upon which its beliefs are founded. *Segal v. Gordon*, 467 F.2d at 608; *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp.

at 522. The bulk of the allegations in the complaint at bar are based on "information and belief." It is clear, however, that many of these allegations relate to matters which are not peculiarly within the defendants' knowledge. S.E.C. filings and stock prices, for example, are publicly available. Hence, plaintiffs should not have based their allegations as to these matters, to the extent they are pleaded at all, solely on "information and belief." As to matters which are peculiarly within the defendants' knowledge, the plaintiffs should have set forth the facts upon which their beliefs are founded.

■ Aside from its failure to comply with Fed.R.Civ.P. 9(b), the complaint is also deficient with respect to the 10(b) claims in that it fails to allege damages and causation. *See Titan Group Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir.), *cert. denied*, 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975). Although causation as an element of a 10b-5 suit may under certain circumstances be inferred from the materiality of an alleged omission, it is clear that "[c]ausation remains a necessary element in a private action for damages under Rule 10b-5." *Id.* at 239. *See also Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972).

■ The complaint alleges that plaintiff Stromfeld purchased 100 shares of A & P common stock in or about January 1979, and that plaintiff Zisook purchased 200 shares in December 1978. The complaint also alleges that the defendants' violations of sections 10(b) and 13(d) artificially depressed the price of A&P common stock to the detriment of the plaintiffs and other members of the alleged class. As the defendants point out in their reply memorandum, if the price of A&P common stock was artificially depressed, Stromfeld and Zisook paid less for the stock than it was actually worth. If this was indeed the case, they could not have been damaged. Even though the complaint alleges that Zisook subsequently sold his stock, he was not damaged by the sale in that he merely lost the "profit" he had obtained when he first purchased the allegedly underpriced stock.

The complaint also fails to allege causation between the alleged wrongful acts and the plaintiffs' alleged injuries. The complaint does not state that plaintiffs purchased the A&P stock in reliance on false and misleading statements, nor does it contend that they would not have bought the stock had the allegedly undisclosed information been made public. Moreover, the complaint does not set forth allegations of fact from which it could be inferred that the plaintiffs' purchase of the stock was caused by the alleged 10(b) violations. Similarly, with respect to Zisook's subsequent sale of his stock, the complaint does not, directly or indirectly, allege causation.

■■■ The plaintiff's "sale of control" allegations must likewise be rejected. It is well-settled that a stockholder is neither obliged to refuse a premium for his shares nor required to advise other stockholders that he is receiving a premium. *Haberman v. Murchison*, 468 F.2d 1305, 1312–13 (2d Cir. 1972); *Wellman v. Dickinson*, 475 F.Supp. 783, 835 (S.D.N.Y.1979); *Christophides v. Porco*, 289 F.Supp. 403, 405 (S.D. N.Y.1968). This is indeed the law even where the premium is being paid for the sale of a controlling block of shares. *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 32 (7th Cir.), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972); *Christophides v. Porco*, 289 F.Supp. at 405. The complaint herein does not allege a situation where shareholders, with the inside knowledge that a premium was being offered for a controlling block of stock, purchased stock from unsuspecting shareholders for resale at the premium price. The facts at bar involve a situation where shareholders who already owned large blocks of stock sold these shares to a buyer at a premium price. *See Haberman v. Murchison*, 468 F.2d at 1312–13.

Plaintiffs attempt to fortify their "sale of control" claim and to distinguish the above-cited cases by contending that:

> [T]he defendants entered into a scheme whereby, without any public disclosure whatsoever, they selectively made available inside information of the Corporation to the Tengelmann defendants in an effort to ensure that these defendants would convey an undisclosed premium upon members of the Hartford Foundation's selling group in return for the disposition of valuable corporate assets and opportunities.

Plaintiffs' Mem. In Opp. To Motion, at 29–30. As noted above, however, the complaint is insufficiently specific as to the fraud claims. Although the complaint charges the Hartford defendants with using their inside positions to acquire inside information, complaint ¶¶ 65(c), (d), it does not provide specifics as to which of the particular defendants were involved in what capacities, when these alleged misappropriations of information occurred, and what corporate assets and opportunities—aside from the A&P name—were converted. Additionally, although the complaint purports to identify the information acquired, see complaint ¶ 65(c), (e), its allegations that the defendants acquired "information on prospective purchasers, tender offers, merger candidates, and similar information" is simply too vague to give the defendants adequate notice of the charges against them.

### C. The Section 14 Claim

■■■ The fourth claim of the complaint charges the defendants with violating the provisions of section 14(d) of the Exchange Act [9] and regulations promulgated thereunder relating to tender offers. Defendants, in moving to dismiss this claim, contend that the complaint fails to allege facts which constitute a tender offer, and argue

**9.** Section 14(d) provides in part: "It shall be unlawful for any person, directly or indirectly, . . . . to make a tender offer for, or a request or invitation for tenders of, any class of any equity security which is registered . . ., if, after consummation thereof, such person would, directly or indirectly, be the beneficial owner of more than 5 per centum of such class, unless at the time copies of the offer or request or invitation are first published or sent or given to security holders such person has filed with the Commission a statement containing such of the information specified in section 13(d) [15 U.S.C. § 78m(d)] of this title, and such additional information as the Commission may [require]." 15 U.S.C. § 78n(d).

instead that the complaint alleges a privately negotiated sale which is not covered by section 14(d).

The Williams Act does not define the term "tender offer," and as a result a number of courts have been confronted with the issue of whether a particular transaction or series of transactions constitutes a "tender offer" within the meaning of section 14. It is clear, however, "that a purely private transaction is not subject to . . . Section 14." *Wellman v. Dickinson*, 475 F.Supp. at 817; *accord, Brascan Ltd. v. Edper Equities Ltd.*, 477 F.Supp. 773, 790 (S.D.N.Y.1979); *S–G Securities, Inc. v. Fuqua Investment Co.*, 466 F.Supp. 1114, 1125 (D.Mass.1978). *See also Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1206–07 (2d Cir. 1978).

In the *Kennecott Copper* case, the second circuit observed that the characteristics of a typical tender offer are "well-recognized," and quoted the description of a tender offer contained in the House Report of the Committee on Interstate and Foreign Commerce:

> The offer normally consists of a bid by an individual or group to buy shares of a company—usually at a price above the current market price. Those accepting the offer are said to tender their stock for purchase. The person making the offer obligates himself to purchase all or a specified portion of the tendered shares if certain specified conditions are met.

584 F.2d at 1206, *quoting* H.R.Rep. No. 1711, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, p. 2811. *See also Piper v. Chris-Craft Industries Inc.*, 430 U.S. 1, 22, 97 S.Ct. 926, 939, 51 L.Ed.2d 124 (1977) (Court described cash tender offer as one "in which publicized requests are made and intensive campaigns conducted for tenders of shares of stock at a fixed price.").

The Securities Exchange Commission, acting as *amicus curiae* in a number of cases, has suggested eight elements to be considered in determining whether a series of acquisitions constitutes a tender offer for purposes of the Williams Act. *See, e. g., Brascan Ltd. v. Edper Equities Ltd.*, 477 F.Supp. at 791; *Wellman v. Dickinson*, 475 F.Supp. at 823–24. These factors are:

> (1) active and widespread solicitation of public shareholders; (2) solicitation for a substantial percentage of the issuer's stock; (3) offer to purchase is made at a premium over the prevailing market price; (4) terms of the offer are firm rather than negotiable; (5) offer is contingent on the tender of a fixed minimum number of shares; (6) offer is open only for a limited period of time; (7) offerees are subjected to pressure to sell their stock; and (8) public announcements of a purchasing program precede or accompany a rapid accumulation of stock.

*See Brascan Ltd. v. Edper Equities Ltd.*, 477 F.Supp. at 791 n. 13.[10]

It is clear that the facts set forth in the complaint herein do not constitute a tender offer. The complaint alleges that the Tengelmann defendants first met with the defendant Hartford Foundation at some point in 1978, and that thereafter the defendants held secret meetings and engaged in secret negotiations. Complaint ¶¶ 48, 50. The complaint charges the defendants with putting together a selling group made up of only seven sellers, "without any public disclosure, [and] without notice to the other shareholders of the Corporation . . . ." *Id.* ¶ 52. The plaintiffs further contend that on January 16, 1979, the seven sellers entered into separate but identical stock purchasing agreements, and that 42 per cent of A&P's stock was subsequently sold. *Id.* ¶¶ 55, 57.

The complaint thus alleges a privately—indeed secretly—negotiated sale which excluded all but seven shareholders of the corporation. The complaint does not allege a public bid to buy stock or a widespread solicitation of stock. Indeed, the complaint charges the defendants with engaging in

---

10. It should be noted that although he applied the S.E.C.'s suggested factors in *Brascan*, Judge Leval expressed doubts as to whether the S.E.C.'s interpretation constituted "either a permissible or a desirable interpretation of the statute." 477 F.Supp. at 791.

secret negotiations involving only seven stockholders. There are no averments in the complaint that the offerees were subjected to high pressure tactics or intensive campaigns, nor does the complaint allege that the defendants publicized their attempts to purchase stock. Although the negotiations did apparently result in seven identical sale agreements, there are no allegations in the complaint that the terms of the offer were not negotiable or that the offer was only open for a limited period of time. The complaint is extremely vague about the dates involved and merely alleges that negotiations commenced "at some point during 1978." Complaint ¶ 47. The allegations in the complaint that the defendants "proceeded to hold secret meetings and negotiations and organized and assembled a [selling] group" indicate that the offer was not open only for a limited period of time, but that a substantial amount of time was required, and furthermore, that the terms of the offer were in fact negotiated.

Of the eight factors suggested by the S.E.C., only three of them could arguably be said to be alleged in the complaint: the Tengelmann defendants were seeking to purchase a substantial percentage of A&P's stock, they were willing to pay a premium above the prevailing market price, and their "offer" was contingent on their being able to purchase a large block of stock. In view of the important allegations which are not alleged the allegations which are set forth in the complaint are simply not enough to support a claim that a tender offer was made.[11] Accordingly, the fourth claim of the complaint must be dismissed on the ground that it fails to state a cause of action.

#### D. Equitable and Pendent Claims

In addition to damages, the complaint seeks injunctive and declaratory relief. The complaint, however, fails to state a cause of action for equitable relief; the equitable claims must therefore be dismissed.

In *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 1 (1975), the Supreme Court held that a private litigant seeking equitable relief under section 13(d) of the Exchange Act must satisfy the traditional prerequisites of equitable relief. The complaint herein fails to allege either that plaintiffs are threatened with irreparable injury, or that money damages will be an inadequate remedy. The Court observed in *Rondeau* that "persons who allegedly sold at an unfairly depressed price have an adequate remedy by way of an action for damages, thus negating the basis for equitable relief." 422 U.S. at 60, 95 S.Ct. at 2077. The complaint herein alleges that the actions of the defendants "artificially depressed" the price of the stock to the plaintiffs' damage. If this was indeed the case, the plaintiffs' recourse is to seek damages rather than equitable relief. *See Myers v. American Leisure Time Enterprises, Ltd.*, 402 F.Supp. at 215.

Because all the federal claims are being dismissed, the pendent state law claims should also be dismissed. *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

#### CONCLUSION

In accordance with the above, the defendants' motion is granted and the complaint is hereby dismissed without prejudice. The plaintiffs are granted leave to file an amended complaint within 30 days after the entry of this decision.

So ordered.

---

11. *Compare Brascan Ltd. v. Edper Equities Ltd.*, 477 F.Supp. at 788–92.