David GOLDBERG, suing derivatively in the right and for the benefit of Universal Gas & Oil Company, Inc., Plaintiff,

v.

Yaacov MERIDOR, Mila Brener, David Meridor, Ara A. Cambere, H. Struve Hensel, Jacob Sutton, Henry A. Singer, Maritimecor, S. A., Maritime Fruit Carriers Company, Ltd., Hornblower & Weeks, Hemphill Noyes, Inc., Laventhol & Horwath a/k/a Laventhol, Krekstein, Horwath & Horwath, Elie Housman, H. L. Federman, Coudert Brothers, Singer, Hutner, Levine & Seeman and Newco Corporation, Defendants,

and

Universal Gas & Oil Company, Inc., Nominal Defendant.

No. 76 Civ. 555.

United States District Court, S. D. New York.

Jan. 17, 1979.

106

Turchin & Topper, P. C., New York City, for plaintiff.

Cichanowicz & Callan, New York City, for defendant Maritime Fruit Carriers Co., Ltd.

Singer, Hutner, Levine & Seeman, New York City, for defendant Henry Singer.

Universal Gas & Oil Co., Inc., New York City, pro se.

Mudge, Rose, Guthrie & Alexander, New York City, for defendants Ara A. Cambere, Hornblower & Weeks, Hemphill Noyes, Inc.

Willkie, Farr & Gallagher, New York City, for defendants Yaacov Meridor and Mila Brener.

Coudert Broth., New York City, for defendant H. Struve Hensel.

Parker, Auspitz, Neesemann & Delehanty, New York City, for defendant H. L. Federman.

D'Amato & Lynch, New York City, for defendant Laventhol.

LASKER, District Judge.

In this derivative action, David Goldberg, a stockholder of Universal Gas & Oil Company, Inc. (UGO), contests an allegedly fraudulent exchange agreement entered into between UGO and its controlling parent, Maritimecor. Goldberg asserts that the exchange, by which UGO was to receive all of Maritimecor's assets and assume all of its liabilities in return for up to 4.2 million shares of UGO's stock, was grossly unfair to UGO because the liabilities of Maritimecor substantially outweighed its assets. While UGO has yet to issue its stock to Maritimecor, it has received the latter's assets and assumed its liabilities with the result, Goldberg asserts, that UGO's financial position has been drastically impaired. In the original complaint, Maritimecor, its controlling parent Maritime Fruit Carriers Company, Ltd., various directors of these two corporations and of UGO, an investment firm and an accounting firm, all of whom Goldberg alleges participated in the fraudulent exchange, were named as defendants.

The complaint has been amended twice since it was filed. The first amended complaint purported to drop all claims arising under state law after this court had ordered that these claims could be maintained only if Goldberg posted security as required by New York law (Order of July 29, 1976). It continued a claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 promulgated thereunder. This complaint was in turn dismissed in February of 1977 for failure to allege deception.[1] The Court of Appeals reversed,[2] finding that with certain specified amendments the complaint would state a proper securities law claim and that Goldberg should have been granted leave to amend his complaint to make these changes. Specifically, Judge Friendly, writing for the majority of the court, found that Goldberg's complaint would state a claim under Rule 10b–5 if amended to include 1) reference to press releases made public by UGO in Au-

gust and December of 1975, which describe the proposed exchange between UGO and Maritimecor without mentioning the allegedly disastrous financial implications of the exchange to UGO, and 2) the fact that one UGO director, Martin Siem, claimed to have been deceived, or at least not fully informed, regarding the exchange.[3]

While Goldberg has now amended his complaint to include the two press releases, which he alleges were deceptive and fraudulent, and to allege that "at least one UGO director" was induced by deception to vote in favor of the transaction (Complaint, ¶ 30), nevertheless, the defendants move under Rules 9(b), 12(b), and 56 of the Federal Rules of Civil Procedure to dismiss the complaint for lack of specificity and failure to state a claim and for summary judgment. Goldberg opposes the defendants' motions and cross-moves to add and drop defendants from the complaint under Rules 15, 21 and 41(a)(2).

At the outset we note the limits of this decision. Following remand by the Court of Appeals, this case was reassigned to a new judge of this court, and we have retained jurisdiction only to determine those issues which relate directly to the validity of the amended complaint. Accordingly, this opinion does not address the numerous, and exhaustively documented, motions for summary judgment presented together with the motions to dismiss the complaint.

## I.

*Motions to Dismiss for Failure to State a Claim*

### A. *Material Deception*

The heart of the defendants' attack on the sufficiency of the complaint is their contention that, as presently drafted, the complaint fails to allege a causal connection between the deceptive press releases and harm to UGO. Specifically, the defendants argue that to state a claim Goldberg must allege that, as a minority stockholder of

---

1. 426 F.Supp. 1059 (S.D.N.Y.1977).

2. 567 F.2d 209 (2d Cir. 1977).

3. *Id.* at 213.

UGO, he had the right to seek to enjoin the exchange between UGO and Maritimecor and would have exercised this right had the press releases accurately reflected the merits of the exchange. In making this argument, the defendants rely on the lengthy discussion in Judge Friendly's opinion concerning the availability of injunctive relief to a stockholder in Goldberg's position.

However, even under the defendants' theory of liability, the complaint is sufficient on this point because at paragraphs 21, 22 and 28, it states:

"Upon information and belief, as part of the aforesaid transaction defendants caused the making of false, misleading and deceptive statements and disclosures including, but not limited to, press releases dated August 1, 1975, and December 19, 1975, copies of which are annexed hereto as Exhibits 'A' and 'B' respectively.

Said press releases were deceptive and fraudulent to plaintiff, as well as the public and the UGO minority shareholders, in that they omitted and failed to disclose facts and distorted and misstated facts relevant to the aforesaid transfer between UGO and Maritimecor."

\* \* \* \* \* \*

"Defendants' omissions to state facts and their misstatements and distortions of facts were material in that plaintiff, had the facts been fairly disclosed, either would have or could have attempted to prevent the transfer of Maritimecor's assets and liabilities to UGO."

These statements satisfactorily allege that the defendants knowingly issued misleading press releases and that the misstatements and omissions in the press releases prevented Goldberg from attempting to stop the transfer.[4]

Moreover, there is another defect to defendants' argument on this point growing out of their incorrect interpretation of the opinion of the Court of Appeals. While it is true that Judge Friendly found on the facts before him that Goldberg did have the right to seek an injunction, his discussion on this point is part of an *alternative* holding following the primary holding of the court that the press releases were materially deceptive if they were likely to have affected the judgment of a reasonable *director*, concerning the merits of the transfer. Judge Friendly set out the following standard of materiality:

". . . When, as in a derivative action, the deception is alleged to have been practiced on the corporation, even though all the directors were parties to it, *the test must be whether the facts that were not disclosed or were misleadingly disclosed to the shareholders 'would have assumed actual significance in the deliberations' of reasonable and disinterested directors or created 'a substantial likelihood' that such directors would have considered the 'total mix' of information available to have been 'significantly altered.'* . . . Hence there is surely a significant likelihood that if a reasonable director of UGO had known the facts alleged by plaintiff rather than the barebones of the press releases, he would not have voted for the transaction with Maritimecor." 567 F.2d 209, 219 (emphasis added)[5]

---

4. The defendants argue that it is not enough to allege the right to attempt to stop the transfer but, borrowing language from Judge Meskill's dissent, that it is necessary for Goldberg to allege that he would have "sought and *obtained* an injunction". 567 F.2d 209, 223 (Meskill, J., dissenting) (emphasis added). However, this argument is inconsistent with the majority opinion which held only that injunctive relief must be available to Goldberg and not that Goldberg must actually have received it. See 567 F.2d 209, 219–20; Note, *Suits for Breach of Fiduciary Duty Under Rule 10b–5 After Santa Fe Industries v. Green*, 91 Harv.L. Rev. 1874,

1893–9f (19f8), discussing the opinion of the Court of Appeals.

5. The starting point for the defendants' argument is a footnote in *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), in which the Supreme Court rejected the minority shareholders' argument that the failure of the majority to give advance notice of the terms of a merger in itself constituted deception even though the majority was not required under state law to provide such notice and the terms of the merger were fully disclosed after it was completed. The basis for

■ The complaint states a claim under this theory as well. In addition to the paragraphs cited above, it alleges:

"Defendants' omissions to state facts and their misstatements and distortion of facts were material in that there is a significant likelihood that a reasonable and independent director of UGO, with full and accurate knowledge of the facts, would not have voted for the said transaction.

Upon information and belief defendants intentionally or recklessly failed to disclose the facts of the transaction to at least one UGO director, and by deceit and deception improperly induced him to vote in favor of the said transaction." (Complaint, ¶¶ 29, 30)

These statements, which closely track the language of Judge Friendly's opinion, adequately allege that the deceptive press releases were likely to have affected the judgment of a reasonable director. Therefore the complaint is sufficient under the primary holding of the appellate decision.[6]

### B. *Exhaustion of Intra-Corporation Remedies*

Rule 23.1 of the Federal Rules of Civil Procedure requires a plaintiff in a derivative action to allege:

"with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors . . . and the reasons for his failure to obtain the action or for not making the effort."

In his previous complaint, Goldberg included as defendants all ten of the directors of UGO and alleged that a demand on the Board would be futile. In the second amended complaint, he again alleges that a demand on the directors would be futile. However, in the current complaint Goldberg has dropped as defendants four of the UGO directors who, he says, "were not at the core of the scheme to defraud UGO". (Turchin Affidavit, p. 36) Moreover, Goldberg concedes that a fifth UGO director, Struve Hensel, changed his vote to oppose the exchange between UGO and Maritimecor (Turchin Affidavit, pp. 33–34). Accordingly, defendants Henry Singer and Singer, Hutner, Levine and Seeman (Singer, Hutner) argue that, since Goldberg admits that half of the Board did not favor the exchange, a demand on the UGO directors has not been shown to be futile.

■ There are major weaknesses to this argument. While Singer and Singer, Hutner apparently rely on Hensel's presumed willingness to pursue the claim on behalf of UGO, Hensel himself, who has submitted an affidavit as part of his motion to dismiss, has not joined in this argument or otherwise represented that a solution could be worked out by the Board. Moreover, at no time during the two year litigation has any UGO director come forward to suggest the availability or wisdom of action by the Board in pursuing the claim. We conclude that there is insufficient factual support to believe that, at this late date, a demand on the directors would be of practical value and accordingly that the discretion of the court in deciding whether to require a demand, 3B *Moore's Federal Practice* ¶ 23.1.-19, at 23.1–83 (2d ed. 1978); *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1228 (10th Cir. 1970); *Abbe v. Goss*, 411 F.Supp. 923, 924–25 (S.D.N.Y.1975), should not be

---

the Court's ruling was the fact that the minority shareholders were not entitled under state law to seek to enjoin the merger. 430 U.S. 462, 474 n. 14, 97 S.Ct. 1292, 51 L.Ed.2d 480. However, as the discussion above indicates, this situation is distinguishable from *Green* since it is alleged here that a reasonable director, who would have been able to stop the exchange, might also have been misled by the press releases.

6. As indicated above, this opinion does not dispose of various issues, presented as part of defendants' motion for summary judgment, which the defendants argue show that Goldberg was not entitled to injunctive relief. These issues include: whether UGO "does business" in New York, whether a New York court would have had subject matter jurisdiction over an action between UGO and Maritimecor, and what relief is available to Goldberg under Panamanian law.

exercised to dismiss the complaint on this ground.[7]

### C. Verification of the Complaint Under Rule 23.1

The defendants argue that the complaint is invalid under Rule 23.1, Federal Rules of Civil Procedure, because it is verified by Morton Turchin, Goldberg's counsel, rather than Goldberg himself. While Rule 23.1 does not specify who is to verify the complaint in a derivative action, the requirement has traditionally been interpreted to mean that the plaintiff, and not counsel, should execute the ·verification. See *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 365, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966);[8] 3B *Moore's Federal Practice*, ¶ 23.1.16[3], at 23.1–62 (2d ed. 1978). In this case plaintiff's counsel argues that when, as here, a plaintiff lives out of state, it is appropriate for his counsel to verify the complaint, citing two decisions which approved verification by an attorney. *Hirshfield v. Briskin*, 447 F.2d 694, 698 (7th Cir. 1971); *Bosc v. 39 Broadway, Inc.*, 80 F.Supp. 825 (S.D.N.Y. 1948).

The position of plaintiff's counsel finds some support in New York State· practice, and suggestions have been made that where counsel is substantially more familiar with the subject matter of the complaint than is the plaintiff, it is appropriate that the verification be that of counsel. See *Surowitz, supra*, at 374, 86 S.Ct. 845 (Harlan, J., concurring), and 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1827, at 332–340.

However, the circumstances of this case are not so exceptional that the majority rule should not be applied. Surely the mere fact that the plaintiff resides in Florida is too slender a basis on which to justify permitting the filing of the complaint without its verification by the plaintiff. Accordingly, the repleaded complaint must be verified by the plaintiff.

### D. Punitive Damages

Among the relief requested by Goldberg is a prayer for punitive damages. Since punitive damages are not available in a private action under § 10(b) and Rule 10b–5, *Green v. Wolf Corp.*, 406 F.2d 291, 303 (2d Cir. 1968), *cert. denied sub nom. Troster, Singer & Co. v. Green*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), the request is stricken from the complaint pursuant to Rule 12(f), F.R.Civ.P.

## II

### Lack of Specificity

Rule 9(b) of the Federal Rules of Civil Procedure requires that, when pleading fraud, the circumstances constituting fraud be stated "with particularity". While this requirement must be reconciled with Rule 8, which directs that a pleading be concise, Rule 9(b) is intended to ensure that each defendant is provided with reasonable detail concerning the nature of his particular alleged involvement in a fraud. *Ross v. A. H. Robins Co.*, [Current Binder] Fed.Sec. L.Rep. (CCH) ¶ 96,388 (S.D.N.Y.1978); *Weinberger v. Kendrick*, 432 F.Supp. 316 (S.D.

---

7. The defendants contend that Goldberg has also violated Rule 23.1 ·by failing to seek a "supervisory audit" of UGO's accounts which they contend he is entitled to as a minority shareholder under Panamanian law. However, it is sufficient for purposes of Rule 23.1 that Goldberg has set forth his attempts to obtain relief from the directors and the shareholders · of UGO, as specifically required by the rule.

8. *Surowitz* deals with Rule 23(b) of the Federal Rules which preceded the current Rule 23.1. However, the verification requirement under both rules is worded in substantially the same way. Compare Rule 23(b):

"*Secondary Action by Shareholders.* In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified . . ." with Rule 23.1:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified . . ." (as amended, 1966).

N.Y.1977); *Jones v. Stirling*, [1974–75 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,927 (S.D.N.Y.1974). The current complaint so totally lacks the detail necessary to put a defendant on notice of the charges against him as to require wholesale repleading.

The inadequacy of the complaint as it now stands is best illustrated by citing several examples. The complaint repeatedly alleges that "the defendants" engaged in fraudulent conduct without specifying how such disparate defendants as directors, corporations, investment bankers, accountants and law firms participated in the exchange; Laventhol and Horwath (an accounting firm) is said to have "participated in preparing the terms of the transfer" with no specification of the particular acts which assisted in effecting the exchange; while defendant Federman is mentioned only once, and then merely to identify him as a director of Maritime Fruit.

While Goldberg's counsel has submitted an affidavit containing a wealth of detail not present in the complaint concerning the involvement of individual defendants, the affidavit does not cure the defects in the complaint since defendants are entitled under Rule 9(b) to a minimum of specificity in the pleadings. Moreover, although inclusion in the complaint of the details set forth in the affidavit would go far toward remedying the deficiencies of the complaint, even the affidavit material does not satisfactorily allege as to each defendant the elements of Rule 10b–5 liability.[9] At a minimum, the complaint must include the following: (1) the nature of each individual defendant's participation in the fraud, including the facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor;[10] and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.[11] Since the complaint fails to provide this information as to *any* individual defendant, it must be amended to conform to these requirements.

## III

### *Dropping and Adding Defendants*

In the second amended complaint, Goldberg has dropped thirteen defendants and added three new ones. He now moves belatedly under Rules 15, 21 and 41(a)(2) of the Federal Rules of Civil Procedure for leave to make these changes. The remaining defendants oppose the changes as prejudicial.

### A. *Dropping Defendants*

Goldberg proposes to drop thirteen defendants. Nine of them, directors of Maritimecor and/or Maritime Fruit, have not been served with a summons and complaint, and therefore the court lacks personal jurisdiction over them. See *Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621, 99 L.Ed. 1119 (1925); 4 C. Wright and A. Miller, *Federal Practice and Procedure* § 1063, at 204 (1969). The remaining

---

**9.** Moreover, it is an imposition on the defendants and the court that in this, Goldberg's third opportunity, he has not provided adequate detail in his complaint and is forced to supplement it with his counsel's affidavit.

**10.** As to aiders and abettors, Goldberg must, of course, allege the following three elements of liability, namely: (1) existence of a primary fraud; (2) knowledge by the aider and abettor of that fraud; and (3) substantial assistance of the fraud. *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47–48 (2d Cir. 1978), —— U.S. ——, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Hirsch v. du Pont*, 553 F.2d 750, 759 (2d Cir. 1977).

**11.** *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972). At paragraph 30 of the complaint, Goldberg alleges upon information and belief that "at least one UGO director" was deceived into voting for the exchange without providing any details to support this belief. The facts concerning the deception of Martin Siem, contained at pages 36–37 of the Turchin Affidavit, if incorporated in the complaint, would satisfy Rule 9(b) on this point.

defendants have given no reason why the motion should not be granted as to the unserved defendants, and there appears to be none. The remaining defendants are not prejudiced by the elimination of the unserved defendants against whom they never had the right to file cross-claims or to secure contributions in the event of a plaintiff's verdict.

Goldberg also proposes to drop four directors of UGO upon whom the complaint has been served.[12] As indicated above, Goldberg's counsel asserts that he received new information in March of 1978, indicating that Martin Siem was deceived as to the realities of the exchange agreement and that the other three UGO directors were not "at the core" of the scheme to defraud UGO. (Turchin Affidavit, pp. 35–36) This information, together with unresolved questions as to the court's jurisdiction over these parties (three of these defendants have pending motions to dismiss for lack of personal jurisdiction), has persuaded the plaintiff that the better course for him would be to withdraw his claim against these defendants.

The remaining defendants assert that they would be prejudiced by the dropping of the four defendants because (1) the defendants who have been dropped will curtail their activities in the United States thus making it difficult for the other defendants to secure jurisdiction over them for purposes of cross-claims; (2) the burden of discovery as to these defendants will be shifted from Goldberg to the other defendants; and (3) the dropping of these defendants creates the "misleading *prima facie* impression" that these defendants were deceived by the others concerning the merits of the exchange.

12. Stipulations to dismiss as to these four defendants were submitted by Goldberg's counsel and counsel for these four defendants and "so ordered" by the court. However, since this was done without notice to the other defendants we do not consider these stipulations binding.

13. While the defendants move under three different provisions of the Federal Rules, we rely on Rule 21 which deals specifically with motions to add or drop parties. However, as

This matter is governed by Rule 21,[13] F.R.Civ.P., which provides:

"Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

Defendants have no "vested right" to keep other defendants in the lawsuit. *duPont Glore Forgan, Inc. v. Arnold Bernhard & Co.*, 73 F.R.D. 313, 315 (S.D.N.Y.1976); *Broadway & Ninety-Sixth St. Realty Corp. v. Loew's*, 23 F.R.D. 9, 11 (S.D.N.Y.1958), and a plaintiff's motion to drop a defendant should be granted unless the remaining defendants can demonstrate prejudice to them. The only prejudice worth mention here is the possible added difficulty of obtaining personal jurisdiction over the dropped defendants should the remaining defendants at some future date decide to cross-claim against them. Yet if this be prejudice at law, it is not of sufficient magnitude to require the plaintiff to pursue his claims against the four defendants or to justify putting them to the expense and anxiety of defense. See *Southern Electric Generating Co. v. Allen Bradley Co.*, 30 F.R.D. 135, 136 (S.D.N.Y.1962). Judge Dimock put it with his usual acumen when, confronted with a similar situation, he stated that the joinder of defendants "was a voluntary gift to their co-defendants by plaintiffs and plaintiffs, having given, could take away." *Broadway v. Ninety-Sixth St. Realty, supra*, 23 F.R.D. 9, 11.

### B. *Adding Defendants*

Goldberg moves to add as defendants the law firms Singer, Hutner and Coudert Brothers (Coudert), and Newco Corporation. Singer, Hutner and Coudert oppose the mo-

Judge Dimock has pointed out, *Broadway & Ninety-Sixth St. Realty Corp. v. Loew's*, 23 F.R.D. 9, 11 (S.D.N.Y.1958), the standard under all three rules is substantially the same: see Rule 15 (leave to amend a pleading "shall be freely given when justice so requires"), Rule 21 (parties may be dropped or added "on such terms as are just"), and Rule 41(a)(2) (an action shall be dismissed "upon such terms and conditions as the court deems proper").

tion and, for the reasons which follow, the motion is denied as to them.

 A party may be added to a lawsuit under Rule 21 only "on such terms as are just". Here, where Goldberg's application comes more than two years after the institution of the lawsuit, it is to be expected that, at a minimum, he establish that the addition of new parties is justified by newly discovered evidence. Moreover, since joining the two law firms would put defendants Henry Singer and Struve Hensel, who have been represented over the past two years by Singer, Hutner and Coudert respectively, to the substantial prejudice of losing their counsel, the justification for the additions of counsel as parties defendant should be particularly strong.

Morton Turchin states in his affidavit that the allegations against Singer, Hutner and Coudert are based on documents acquired from counsel for Martin Siem in March of 1978, and therefore, in determining the sufficiency of the claims, we have tried to consider only this new information. Unfortunately, our efforts have been impeded by Turchin's failure to identify specifically any of the documents received from Siem except to suggest, in a footnote to his affidavit, that they consist of "minutes of Board meetings". Accordingly, we have proceeded by paying particular attention to allegations stemming from minutes of Board meetings, assuming this data to be newly acquired, and have disregarded data, such as SEC filings, which has been available throughout the litigation. If this approach has resulted in underinclusion of relevant, new documents, Goldberg has brought this prejudice upon himself by failing to be more specific.

 The evidence against Singer, Hutner and Coudert stemming from Board meetings consists of the following statement by David Meridor at the October 21, 1975 meeting of the Maritime Fruit Board:

"Mr. David Meridor recalled to the Board that in the Resolution passed by them on June 23, 1975, the above Agreement between Maritimecor and UGO was approved subject to the following conditions, namely:

(1) The delivery at the closing of legal opinions by Singer & Pincus on behalf of Maritimecor and by Coudert Brothers on behalf of UGO, substantially as set forth in the Agreement; . . . [14]

(Plaintiff's Exhibit K, p. 22)

However, the minutes of the Board meeting go on to state that Coudert decided not to render an opinion because of a conflict of interest. Nor does Turchin claim that Singer, Hutner ever actually prepared an opinion on behalf of Maritimecor. The only other additional "new" evidence is the fact, recorded in the minutes of the 1974 UGO shareholders meeting, that a member of Singer, Hutner was "of counsel to the corporation" and "acted as secretary thereof". (Turchin Affidavit, pp. 29–30) [15] Even under ordinary circumstances these facts would be too vague to support a claim for fraud. They are certainly inadequate to justify approval of plaintiff's addition of the law firms as defendants two years after the commencement of the suit, particularly in light of the prejudicial result of depriving Henry Singer and Struve Hensel of

---

14. During part of the period covered by the complaint, Singer, Hutner was composed of a different partnership and was known as Singer & Pincus.

15. The following additional facts are relied on by Turchin in his affidavit: (1) *as to Singer, Hutner*: the firm has acted as general counsel to UGO and to Maritime Fruit Co. since 1970, worked on SEC filings for Maritimecor in 1974, defendant Singer corresponded concerning UGO affairs on firm stationery, and a draft resolution concerning the exchange was "presumably" prepared by the firm; (2) *as to Cou-*

*dert*: the firm acted as special counsel to Maritime Fruit throughout the period mentioned in the complaint, received substantial disbursements from UGO in 1974 according to UGO's Form 20k, Struve Hensel corresponded concerning the affairs of UGO on firm stationery. We consider these facts unpersuasive, some because they were available when the complaint was originally filed, and others are because they are irrelevant (use of firm stationery) or unsubstantiated (draft resolution "presumably" prepared by Singer, Hutner).

their counsel which such addition would cause. Accordingly, the motion to add Singer, Hutner and Coudert is denied.

In sum, the motions to dismiss under Rule 12(b)(6) for failure to state a claim are denied; the motions to dismiss under Rule 9(b) for failure to particularize the involvement of individual defendants are granted; the motion to drop defendants under Rule 21 is granted; the motion to add defendants under Rule 21 is denied as to Singer, Hutner and Coudert. The motions for summary judgment are deferred for decision by the Judge to whom the case has now been assigned.

The plaintiff is granted leave to replead within thirty days of the filing of this decision. The Clerk of the Court is directed to enter judgment in favor of any defendant as to whom the complaint is not repleaded within that time.

It is so ordered.