**WATERMAN STEAMSHIP CORPORATION**

v.

**AVONDALE SHIPYARDS, INC., et al.**

Civ. A. No. 78–2118.

United States District Court, E. D. Louisiana.

Dec. 2, 1981.

pressure, high speed, flexible couplings installed in the main propulsion units of lighter-aboard-ship (LASH) vessels owned by the plaintiffs. Waterman Steamship Corporation and Delta Steamship Lines filed suit against defendants Avondale Shipyards, Inc., the builder of the LASH vessels; DeLaval Turbine, Inc., the subcontractor which manufactured the propulsion units; and Zurn Industries, Inc., the sub-subcontractor which manufactured the allegedly defective couplings. Trial of these actions began on Monday, November 30, 1981.

On September 9, 1981, I heard nine motions filed by the parties. Included among them were the motions of defendants DeLaval and Zurn for partial summary judgment on the antitrust claims asserted by both plaintiffs pursuant to 15 U.S.C. §§ 1, 2, and on the claim brought by Delta under the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c). Both motions were taken under submission, and in a brief minute entry issued on October 13, 1981, I denied defendants' motions for summary judgment on plaintiffs' antitrust claims and granted defendants' motions for summary judgment on Delta's RICO claim. My reasons for these rulings are set out below.

In their motions for partial summary judgment on the antitrust claims, DeLaval and Zurn argue that the property damages and consequential damages sought by the plaintiffs in their antitrust causes of action are not properly recoverable because they are not "antitrust injuries" resulting from anticompetitive activity in violation of the antitrust laws. In addition, Zurn contends that Waterman's claim for alleged overcharges resulting from the anticompetitive activity of the defendants should be limited to purchases of couplings made prior to October 20, 1977. In opposing the motions, plaintiffs argue that the damages they suffered are indeed "antitrust injuries" for which the antitrust laws provide recovery. They also argue that there are factual issues which remain in dispute and which make summary judgment in this instance inappropriate.

J. Barbee Winston and John W. Sims, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., Rayner M. Hamilton, White & Case, New York City, for Waterman Steamship Corp.

A. R. Christovich, Christovich & Kearney, New Orleans, La., David H. Lund, Erie, Pa., William M. Wycoff, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Zurn Industries.

Robert B. Acomb, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Avondale Shipyards, Inc.

John B. Martin and Reeder Fox, Duane, Morris & Heckscher, Philadelphia, Pa., Curtis R. Boisfontaine, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for DeLaval Turbine, Inc.

Edward S. Bagley, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for Delta Steamship Lines, Inc.

SEAR, District Judge.

These consolidated actions for damages involve the alleged failures of four low

The issue of recoverability of the damages sought by plaintiffs in the antitrust causes of action was foreshadowed in the motions decided in my minute entry of February 14, 1980. At that time, I determined that higher prices paid by plaintiffs as a result of the allegedly anticompetitive activity of the defendants were clearly recoverable in an antitrust action; however, I did not determine whether the remaining damages sought by the plaintiffs were compensable under the antitrust laws. I now conclude that plaintiffs *may* recover all of the damages they seek under the antitrust laws *if* they prove as a matter of fact that those damages actually flowed from defendants' violations of the antitrust laws. In short, plaintiffs must prove that their damages were a direct result of defendants' anticompetitive activity in violation of the antitrust laws.

■ The statute itself provides that any person "injured in his business or property *by reason of anything forbidden in the antitrust laws*" may bring an action for treble damages, costs and attorney's fees. 15 U.S.C. § 15 (emphasis added). While the statute is broadly worded, the United States Supreme Court has imposed certain limitations on the kinds of losses that are compensable in antitrust actions. In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 444 (1977), the Court held that in order for plaintiffs to recover in an action brought pursuant to the merger provisions of the antitrust laws, 15 U.S.C. § 18, they "must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 489, 97 S.Ct. at 697. The Court ruled that compensable antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* While the antitrust laws were *not* designed to provide a remedy for all business wrongs, *Lupia v. Stella D'Oro Biscuit Co., Inc.*, 586 F.2d 1163, 1170–71 (7th Cir. 1978); *Harrison v. Prather*, 435 F.2d 1168, 1176 (5th Cir. 1970), they *were* enacted to protect competition, *Bruns-*

*wick Corp. v. Pueblo Bowl-O-Mat, Inc., supra*, 429 U.S. at 488, 97 S.Ct. at 697, and thereby produce not only lower prices, but also better quality goods and services, *National Society of Professional Engineers v. United States*, 435 U.S. 679, 695, 98 S.Ct. 1355, 1367, 55 L.Ed.2d 637 (1978). The *Brunswick* case teaches that as long as plaintiffs can prove that their damages were the result of the anticompetitive effect of the claimed antitrust violations and that their losses were the type that the claimed violations would be likely to cause, the damages are compensable under the antitrust laws.

■ A motion for summary judgment should not be granted if there is a genuine issue as to any material fact; the burden is on the moving party to show that there is "not the slightest doubt" as to the facts and that only the legal conclusion remains to be resolved. *Clark v. West Chemical Products, Inc.*, 557 F.2d 1155, 1157 (5th Cir. 1977). In considering such motions, inferences most favorable to the party opposing the motion must be drawn. *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 214 (5th Cir. 1976). Based on the record before me, I conclude that disputed material facts exist which must be resolved on trial of the merits and which make entry of summary judgment inappropriate. Specifically, the question of whether the damages suffered by plaintiffs were directly caused by the alleged unlawful agreement of DeLaval and Zurn not to compete in the sale of coupling replacement parts for the LASH vessels is still in dispute. In addition, material issues of fact involving the extent of Zurn's participation in the parties' meeting of October 20, 1977 and subsequent activities and the actions of Waterman's Mr. Richarme make summary judgment on the overcharges argument advanced by Zurn inappropriate. Accordingly, defendants' motions for partial summary judgment on the antitrust causes of action asserted by the plaintiffs are denied.

Like the motions concerning the antitrust claims, defendants' motions for partial sum-

mary judgment on the RICO cause of action raised by Delta were also foreshadowed by the motions decided in my minute entry of February 14, 1980. At that time, I reluctantly determined that Delta had adequately stated a cause of action against DeLaval and Zurn under the civil remedies provision of RICO, even though it was undisputed that neither defendant had any connection with organized crime and there was no allegation or suggestion that either defendant had been infiltrated or affected in any way by organized crime elements. In these motions for partial summary judgment, the defendants have again raised the legal argument that to apply the civil remedies provisions of RICO to this particular case would go far beyond any purpose for which RICO was designed and enacted. The defendants argue that RICO was not intended to provide a private cause of action for treble damages against legitimate business enterprises like DeLaval and Zurn when there is no hint or suggestion that either is connected to the organized crime activities against which RICO was aimed. Delta argues [1] that the language of the RICO statute is clear, unambiguous, and broad enough to support the claim raised by Delta in this case.

I have now reconsidered the position I took in my minute entry of February 14, 1980 in light of the arguments of counsel, the Supreme Court's recent opinion in *United States v. Turkette*, —— U.S. ——, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and an exhaustive review of the legislative history of the statute. I have concluded based on this review that RICO's civil coverage does not extend to the claim asserted in this case by Delta and that the motions of the defendants for partial summary judgment on Delta's RICO cause of action must be granted.

■ The provisions of the RICO statute, both criminal and civil, are found in the United States Criminal Code, 18 U.S.C. § 1961 *et seq.* RICO actually creates substantive federal criminal offenses, making it unlawful, among other things, to participate in the affairs of an enterprise, whose activities affect interstate commerce, "through a pattern of racketeering activity" and to conspire to violate any of the provisions of the criminal RICO provisions. 18 U.S.C. § 1962(a), (c), and (d). The civil remedies provision of RICO provides simply that any person "injured in his business or property by reason of a violation of section 1962" may bring an action for treble damages, costs and attorney's fees. 18 U.S.C. § 1964(c). Most of the reported cases interpreting the RICO statute have arisen in the context of criminal prosecutions. The case law addressing the availability of the RICO civil remedies to private litigants with no apparent relationship to organized crime activities is scant, and the few reported authorities are split on the issue of the breadth and applicability of the RICO civil remedies. *See Hellenic Lines, Ltd. v. O'Hearn*, 523 F.Supp. 244, (S.D.N.Y.1981); *Parnes v. Heinold*, 487 F.Supp. 645, 646 (N.D.Ill.1980); *Heinold Commodities, Inc. v. McCarty*, 513 F.Supp. 311, 313 (N.D.Ill. 1979); *Farmers Bank v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1280 (D.Del.1978); *Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109, 112–13 (S.D.N.Y.1975). *See also* the unpublished opinion in *North Barrington Development, Inc. v. Fanslow*, F.Supp., Civil Action No. 80–C–2644 (N.D.Ill.1980) (Decker, J.), submitted by the defendants in support of their motions.

The Supreme Court's most recent discussion of the RICO statute arose in the criminal context. In *United States v. Turkette, supra*, the Court concluded that the term "enterprise" as employed in the Act includes legitimate entities which exist for purposes other than criminal activity, as well as entities which exist exclusively for illegitimate purposes, including the commission of criminal acts. In specifically addressing the meaning of the term "enterprise," the Court found that neither the

---

1. Unlike Delta, Waterman has asserted no cause of action against any defendant pursuant to RICO.

language nor structure of RICO limits its application to legitimate enterprises; instead, the term clearly applies to criminal organizations as well. *United States v. Turkette, supra*, 101 S.Ct. at 2530–31. Although the *Turkette* case involved a criminal prosecution, the Court provided some guidelines that are useful to resolution of the issue presented by the motions that are presently before me. First, the Court noted that the language of a statute merely provides a starting point for determining its scope. "If the statutory language is unambiguous, *in the absence of a 'clearly expressed legislative intent to the contrary*, that language must ordinarily be regarded as conclusive.' " *Id.* 101 S.Ct. at 2527 *quoting Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added). Second, in reviewing and discussing the legislative history of the statute, the Court indicated that Congress' overriding intent in drafting RICO in such broad terms was to provide an effective mechanism for eradicating organized crime from the social fabric; the civil remedies provided by the statute are specific tools designed to assist in the eradication of organized crime. *See United States v. Turkette, supra*, 101 S.Ct. at 2529–32. In its exhaustive review of the legislative history of RICO, the Court said:

> [I]t was the declared purpose of Congress "to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions *and new remedies to deal with the unlawful activities of those engaged in organized crime.*" The various titles of the Act provide the tools through which this goal is to be accomplished. Only three of those titles create substantive offenses .... The other titles provide various procedural and remedial devices to aid in the prosecution and

incarceration of *persons involved in organized crime.*

*Id.* 101 S.Ct. at 2531–32 (emphasis added).

Although the language of Section 1964(c) upon which Delta bases its RICO cause of action is probably broad enough to be applied in this case, I conclude that the history of the statute [2] reveals a clearly expressed legislative intent that RICO should apply only to actions involving organized crime activities, and not to everyday civil actions like those in this proceeding, involving private litigants with no relation to organized crime. To give RICO the broad and unlimited application suggested by Delta in this case would be to make a travesty of Congress' clear intent to the contrary. The civil remedies provisions of RICO were not designed to convert every fraud or misrepresentation action involving corporations who use the mails or telephones to conduct their businesses in interstate commerce into treble damages RICO actions. Rather, the RICO civil provisions were enacted as an additional tool for use in the eradication of organized crime. Accordingly, having reconsidered my earlier ruling on the defendants' motions to dismiss for failure to state a claim, and having considered the present motions for partial summary judgment on the RICO claim asserted by Delta, I find that defendants' motions must be granted and the RICO cause of action dismissed.

---

**2.** In addition to the extensive discussion of RICO's legislative history contained in *United States v. Turkette, supra*, 101 S.Ct. at 2531–34, *see* H.R.Rep. No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News 4007; S.Rep. No. 617, 91st Cong., 1st Sess. (1969); 116 Cong.Rec. 585–92, 845–46, 971–72, 35204–11, 35342–43.