**Thomas A. BRUNS II, et al., Plaintiffs,**

v.

**Gerald LEDBETTER, et al., Defendants.**

**Civ. No. 83–2651–T.**

United States District Court,
S.D. California.

April 10, 1984.

Steven M. Green, San Diego, Cal., for plaintiffs.

Amalia Meza, Rogers & Wells, San Diego, Cal., for Keystone Oil Company, Inc.; L.D. Haley; Laura H. Browder; Mary Ann Haley; Jim Bob Haley.

## ORDER

TURRENTINE, District Judge.

Plaintiffs are 32 investors in seven oil and gas leases. The promised "black gold" failed to well up in sufficient quantities, and plaintiffs apparently lost their money. They now sue those they believe responsible. Defendants are eleven people, two corporations and one economic entity of an unspecified variety, who were either the promoters of the investment or affiliated with the enterprise in which plaintiffs' money was invested.

Plaintiffs sue all of the defendants on 18 counts of fraud, securities violations, breach of contract, conversion and other state statutory and common law grounds. Several of the defendants, Keystone Oil Company and L.D. Haley, Laura H. Browder, Mary Ann Haley and Jim Bob Haley, now bring this motion to dismiss based primarily on Rules 12(b)(6) and 9(b).

## I. FAILURE TO PLEAD FRAUD IN ACCORD WITH RULE 9(b).

Federal Rule 9(b) requires in averments of fraud that "the circumstances constituting fraud ... shall be stated with particularity." In the instant case, defendants say Rule 9(b) means that fraud must be pled with particularity with respect to each individual defendant. The Complaint certainly does not do so; it lumps all of the defendants together. The plaintiffs allege that each defendant is the agent of the others, ¶ 18, and that all defendants aided and abetted one another in their conspiracy to defraud plaintiffs. ¶ 19. Every allegation in the Complaint, be it manipulation, misrepresentation, conversion or breach of contract, is levelled at "defendants, and each of them." *See, e.g.,* ¶¶ 58, 67. These 14 defendants, with roles as diverse as promoter, driller and corporation officer, are treated as a monolithic enterprise whose sole purpose was to separate plaintiffs from their money. Except for the introductory paragraphs that name and identify the defendants, the Complaint contains not one specific reference to the individual involvement of any of the defendants. *See, e.g.,* ¶¶ 23–26, 28–37, 48. The pleading requirements of the Federal Civil Rules are indeed liberal, but they demand more than this.

Plaintiffs argue that the law does not require them to attribute particular statements or acts to particular defendants, and that they have met the requirements of Rule 9(b). They rely primarily on *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir.1977); *Walling v. Beverly*

*Enterprises,* 476 F.2d 393, 397 (9th Cir. 1973); *Zatkin v. Primuth,* 551 F.Supp. 39, 42 (S.D.Cal.1982); and *In re Equity Funding Corp. of America Securities Litigation,* 416 F.Supp. 161, 181 (C.D.Cal.1976). None of these cases lends support to plaintiffs' position. *Bosse* adds nothing to the law on this subject and relies totally on *Walling. Walling* sets forth no standards for Rule 9(b) pleading. *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 637 (N.D. Cal.1980). It merely makes an *ad hoc* determination that the complaint in that case was sufficiently detailed to pass muster. *Walling, supra,* 476 F.2d at 397.

Nor does a close reading of *Zatkin v. Primuth* bear out plaintiffs' contention that one need not plead specific fraud by individual defendants. There the court noted an exception to the particularity requirement of 9(b) in cases of corporate fraud where the false or misleading information is conveyed in a prospectus or registration statement, 551 F.Supp. at 42, and can therefore be reasonably attributed to the defendant officers. No such allegations of group-published information have been made in this case. Moreover, certain misrepresentations in *Zatkin* were pled with particularity and with respect to individual defendants where possible.

Similarly, the *Equity Funding* case—which was the only authority relied upon by the *Zatkin* court—actually supports the defendants' argument. The District Court in that action allowed somewhat more general pleading to survive a motion to dismiss only because: (1) it was multidistrict litigation; (2) it involved several class actions; (3) the fraud took place over a period of eight years; and (4) the complaint broke the defendants down into groups of primary offenders and aiders and abettors and pled with particularity the basis of liability of each group and its relation to the other group. 416 F.Supp. at 171–72. The case at hand is not so complex as to justify a similar relaxation of Rule 9(b). Moreover, as the court in that case noted, the complaint in *Equity Funding* "set[ ] out the alleged fraudulent activities related to EFCA and *the acts of each defendant*

for which liability is claimed." 416 F.Supp. at 171 (emphasis supplied). Since plaintiffs cite the case to this court as authority, the court assumes that they are willing to plead in like fashion.

On the other side of the scale, there is ample authority for defendants' position that those seeking redress must distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud. *E.g., Goldman v. Belden,* 98 F.R.D. 733, 739 (W.D.N.Y.1983); *Natowitz v. Mehlman,* 542 F.Supp. 674, 676 (S.D. N.Y.1982); *McFarland v. Memorex, supra,* 493 F.Supp. at 637–39; *Stromfeld v. Great Atlantic & Pacific Tea Co.,* 484 F.Supp. 1264, 1270 (S.D.N.Y.1980); *In re Haven Industries Securities Litigation,* 462 F.Supp. 172, 182–83 (S.D.N.Y.1978); *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 522 n. 7 (S.D.N.Y.1977); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976); *Lerman v. ITB Management Corp.,* 58 F.R.D. 153, 156 (D.Mass.1973). One does not plead fraud by simply invoking the language of the relevant statutes. A complaint should be long on facts and short on invective. It must set forth:

> (1) the nature of each individual defendant's participation in the fraud, including facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor; and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.

*Goldberg v. Meridor,* 81 F.R.D. 105, 111 (S.D.N.Y.1979). This the plaintiffs have not done. Accordingly, Counts I, II, III, IV, XII, XIII and XVIII will be dismissed with leave to amend.

## II. FAILURE TO STATE A CLAIM UNDER § 17.

Counts I and II seek damages under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), even though that provision

does not expressly provide for a private right of action for damages. Defendants have made a strong argument that such a right does not exist. Plaintiffs' only response is the citation of *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981), in which plaintiffs claim the Ninth Circuit Court of Appeals held that there is a private right to sue under § 17(a).

The *Stephenson* case in fact *held* no such thing. The court's remarks about § 17(a) were wholly nugatory, since it had already decided on other grounds that the defendants' were entitled to summary judgment on plaintiffs' § 17 claim. 652 F.2d at 815. Since the court went beyond the scope of the questions presented when it raised the § 17 issue *sua sponte*, its brief comments about inferring a private cause of action are purest *obiter dicta*.

Such vagrant observations about important questions are especially unauthoritative when unaccompanied by analysis. *Stephenson* relied wholly on the Second Circuit's decision in *Kirshner v. United States*, 603 F.2d 234 (2d Cir.1978), which was written before the Supreme Court handed down *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

■ The proper focus of a search for an implied cause of action is legislative intent. *Touche Ross, supra*, 442 U.S. at 575–77, 99 S.Ct. at 2488–90; *see also California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981). *Touche Ross* and *Transamerica* emphasized the first three elements of the test for implication of a private action announced by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). Thus, a court will not infer the existence of a private remedy without considering: (1) whether plaintiff is a member of the class for whose special benefit the statute was enacted; (2) whether there is any indication of a legislative intent to create such a right; and (3)

whether inferring such a right would be consistent with the legislative scheme. *Ibid.*

■ The first element of the inquiry is easily dispensed with, as § 17(a) does not benefit any particular class, but represents "a general censure of fraudulent practices; only subsequent provisions enable equitable and criminal causes of action." *Landry v. All American Assurance Co.*, 688 F.2d 381, 389 (5th Cir.1982). Plaintiffs assert in their papers that they will suffer "serious damage" and "hardship" if their § 17(a) claims are dismissed, Plaintiffs' Opposition at 1056–1057, and claim that this would be contrary to the purpose of the statute. The Supreme Court has observed that

'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.' Instead, our task is limited solely to determining whether Congress intended to create the private right of action asserted.

*Touche Ross, supra*, 442 U.S. at 568, 99 S.Ct. at 2485, (citation omitted).

The legislative history of the statute reveals no intention to create a private right under § 17(a); §§ 11 and 12 create and define the civil liabilities imposed by the act and the machinery for their enforcement. H.R.Rep. No. 85, 73d Cong., 1st Sess. 9–10 (1933). The literature of both contemporaneous and subsequent commentators is unanimous that § 17 was meant only to afford a basis for injunctive relief and criminal prosecution, not to supplement the civil liabilities set out in §§ 11 and 12. See Landis, *Liability Sections of Securities Act*, 18 Am.Acct. 330, 331 (1933); Douglas & Bates, *Federal Securities Act of 1933*, 43 Yale L.J. 171, 181–82 (1933); 3 L. Loss, Securities Regulation 1785–86 (1961). The courts which have examined the question in light of the *Touche Ross-Transamerica* analysis have come to the same conclusion. *See, e.g., Landry, supra*, 688 F.2d at 389–90; *Memorex, supra*, 493 F.Supp. at 652.

Under the approach taken by the Supreme Court in *Transamerica, supra,* 444 U.S. at 23–24, 100 S.Ct. at 248–249, the inquiry could terminate here. However, a brief examination of the third prong of the *Cort* test further fortifies this result. This element asks whether "it is consistent with the underlying purposes of the legislative scheme to imply [sic] such a remedy for the plaintiffs?" *Cort, supra,* 422 U.S. at 78, 95 S.Ct. at 2088. It is crucial to remember at this point that the statute we are dealing with is not as broad as the 1934 Securities Exchange Act with its expansive panoply of remedies. As Professor Loss of Harvard pointed out some time ago,

> The 1933 Act is a much narrower statute. It deals only with disclosure and fraud in the sale of securities. It has but two important substantive provisions, §§ 5 and 17(a). Non-compliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 ... are all embracing.

3 L. Loss, Securities Regulation 1784–85 (1961). Those provisions, §§ 11 and 12; indeed confer specific rights of action upon purchasers, but the plaintiff must comply with certain procedural limitations before a claim may be brought. *See, e.g.,* § 13 of the Act, 15 U.S.C. § 77m. To now create a cause of action under § 17(a) without those limitations would be to throw the proverbial monkey wrench into Congress' carefully wrought machinery. *Landry, supra,* 688 F.2d at 390.

The Supreme Court's own treatment of a parallel situation in regard to § 17(a) of the 1934 Securities Exchange Act is highly instructive:

> Further justification for our decision not to imply [sic] the private remedy ... may be found in the statutory scheme of which § 17(a) is a part. [S]ection 17(a) is flanked by provisions of the 1934 Act that explicitly grant private causes of action.... Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly.

*Touche Ross, supra,* 442 U.S. at 571–72, 99 S.Ct. at 2486–87 (citations omitted). In *Transamerica,* the Supreme Court also refused to infer a private remedy under § 206 of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–1 *et seq.,* an antifraud provision remarkably similar to § 17(a) of the 1933 Act. The Court refused to infer the presence of a private action under § 206 even though there is no express right of action anywhere in the Investment Advisors Act. It therefore seems even less likely that the Supreme Court would smile upon the judicial "discovery" of such a private right of action under § 17(a), since the 1933 Act expressly provides remedies elsewhere. *Memorex, supra,* 493 F.Supp. at 651–52. Therefore, Counts I and II will be dismissed for failure to state a claim upon which relief may be granted.

### III. FAILURE TO STATE A CLAIM UNDER RICO.

■ Count VII of the Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act, ("RICO") 18 U.S.C. § 1961 *et seq.* Much has been written about civil liability under RICO—not all of it edifying. All the authorities agree that RICO is extraordinarily broad as written, and for good reason. RICO, enacted as part of the Organized Crime Control Act of 1970, "was designed in a multifaceted campaign against the pervasive presence of organized crime infiltrated in American business and trade. The preamble of the statute states its purpose: 'To seek the eradication of organized crime in the United States....' Pub.L. No. 91–452, 84 Stat. 922–23 (1970)." *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1359 (S.D.N.Y. 1983). Congress in its wisdom declined to define "organized crime" and instead wrote a statute remarkable for its flexibility and ambiguity. Civil liability under RICO—which includes treble damages and attorneys' fees—extends to any person who belongs to an "enterprise" which conducts a

"pattern of racketeering activity." 18 U.S.C. § 1962(c). An "enterprise" is any group of people or legal entities associated in law or fact, while "racketeering activity" includes violation of the federal wire and mail fraud statutes, 18 U.S.C. §§ 1341 & 1343, as alleged here. 18 U.S.C. § 1961(1)–(4). A private party may bring a civil action under RICO if he has been "injured in his business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c).

The only predicate acts alleged here are securities violations and use of the wires and mails to defraud. Complaint ¶ 65. These acts are expressly included in RICO, yet finding acts within the broad ambit of that statute begins, rather than concludes our inquiry. "[It] is a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.'" *United Steelworkers of America v. Weber*, 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979), *quoting Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). A legislative failure to draw "bright lines" delineating the scope of RICO does not absolve this court of its duty to interpret and apply the law. As with the Sherman Antitrust Act, RICO was drafted with deliberately broad strokes by a Congress apparently convinced that the law would be most effective if given to the federal courts to develop by the slow accretion that is the genius of the common law.

In the civil context, the inherent check of prosecutorial discretion is absent. There is thus "every reason why the application of RICO should be restricted sharply to organized crime and the enterprises on which its talons have fastened." *Moss v. Morgan Stanley, supra*, 553 F.Supp. at 1361.

If read as myopically as plaintiffs suggest, RICO would literally make a federal case out of nearly every instance of business fraud. As one perceptive court put it:

The civil remedies provisions of RICO were not designed to convert every fraud or misrepresentation action involving corporations who use the mails or telephones to conduct their businesses in interstate commerce into treble damage RICO actions. Rather the RICO civil provisions were enacted as an additional tool for use in the eradication of organized crime.

*Waterman S.S. Corp. v. Avondale Shipyards, Inc.*, 527 F.Supp. 256, 260 (E.D.La. 1981). In the particular circumstances of these cases, it is important to note that it was clearly established at the time RICO was enacted that there was no private right of action for violations of the mail fraud statute. "It is implausible that Congress could have meant to alter this accepted rule to the extent of creating a right of action for treble damages without a single mention of such a revolutionary consequence anywhere in the legislative history." *Moss v. Morgan Stanley, supra*, at 1361.

It is equally implausible that Congress meant to bestow treble damages upon some plaintiffs as a sort of reward for being clever enough to sue under RICO rather than only under the traditional securities laws, where less ambitious plaintiffs would receive one third as much for an identical injury. *Harper v. New Japan Securities Int'l, Inc.*, 545 F.Supp. 1002, 1007–08 (C.D.Cal.1982). *But see* Note, *Civil RICO, The Temptation and Impropriety of Judicial Restraint*, 95 Harv.L.Rev. 1101, 1104 (1982). Although RICO uses and occasionally expands upon the violations designated as racketeering activities, there is no indication that it was meant to supplement or supplant the remedies already provided by the statutes that define the predicate offenses. *United States v. Forsythe*, 560 F.2d 1127, 1135 (3d Cir.1977) (RICO not meant to punish state law violations); *Harper, supra*, 545 F.Supp. at 1008 (RICO not designed to pre-empt or supplement existing securities laws); *Van Schaick v. Church of Scientology*, 535 F.Supp. 1125, 1137 (D.Mass.1982) (RICO not intended as remedy for consumer fraud); *Adair v. Hunt Int'l Resources Corp.*, 526 F.Supp. 736, 747 (N.D.Ill.1981) (RICO not envisioned as an alternative and cumulative remedy for securities fraud).

RICO constitutes a frontal assault on the economic base of organized crime. It is a civil weapon to be wielded against those engaged in organized crime who have gained an unfair competitive or financial advantage through criminal means associated with racketeering. *United States v. Turkette*, 452 U.S. 576, 589, 591–92 & n. 14, 101 S.Ct. 2524, 2531, 2532–33 & n. 14, 69 L.Ed.2d 246 (1981). RICO's civil remedy provision permits a recovery by "any person injured in his business or property *by reason of a violation of § 1962.*" 18 U.S.C. § 1964(c). The virtual identity of relevant language between § 1964(c) and § 4 of the Clayton Act, 15 U.S.C. § 15, is neither accidental nor meaningless. RICO was originally envisioned as an antitrust statute and the language of § 1964(c) was retained by Congress "long after it had decided that the Organized Crime Control Act should be enacted as an independent statute. Thus, analogy to antitrust law is the most logical point of departure in fashioning a well-reasoned construction of § 1964(c)." *Harper, supra*, 545 F.Supp. at 1007.

█ In the antitrust context, the Supreme Court has written that "for plaintiffs to recover treble damages on account of § 7 violations, they must prove more than injury causally linked to an alleged presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 70 (1977); *see also Harper, supra*, 545 F.Supp. at 1006; *Van Schaick, supra*, 535 F.Supp. at 1136; *Waterman S.S. Corp. v. Avondale Shipyards*, 527 F.Supp. 256, 258 (E.D.La.1981); *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206, 208 (E.D.Mich.1981). Therefore, to state a claim under RICO a plaintiff must allege not only injury from the predicate offense—here securities and mail and wire fraud—but also a "racketeering enterprise injury" of the sort that RICO was enacted to remedy and deter. *Moss v. Morgan*

*Stanley, supra*, 553 F.Supp. at 1361; *Johnsen v. Rogers*, 551 F.Supp. 281, 285 (C.D. Cal.1982); *Harper v. New Japan Securities Int'l., Inc.*, 545 F.Supp. 1002, 1007 (C.D.Cal.1982); *Van Schaick v. Church of Scientology*, 535 F.Supp. 1125, 1137 n. 11 (D.Mass.1982); *Waterman S.S. Corp. v. Avondale Shipyards, supra*, at 260; *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206, 208–09 (E.D.Mich.1981); *see also Hokama v. E.F. Hutton & Co.*, 566 F.Supp. 636, 643 (C.D.Cal.1983); *No. Barrington Development, Inc. v. Fanslow*, 547 F.Supp. 207, 211 (N.D.Ill.1980); *Adair v. Hunt Int'l Resources Corp.* 526 F.Supp. 736, 747 (N.D.Ill.1981).

A "racketeering enterprise injury" might be found if a civil RICO defendant's capacity to harm the plaintiff is enhanced by an infusion of cash from illicit activities, *see Landmark Savings & Loan, supra*, 527 F.Supp. at 209, or if the plaintiff lost a cable TV franchise because of bribes paid by the defendant to the city council. *See Teleprompter of Erie, Inc. v. City of Erie*, 537 F.Supp. 6 (W.D.Pa.1981) (RICO claim dismissed on other grounds); *see also Van Schaick v. Church of Scientology, supra*, 535 F.Supp. at 1136–37 (and cases cited therein, giving other examples).

Here, plaintiffs have alleged only that the injury to their investments resulted from securities fraud which happened to involve use of the mails and wires. Therefore, plaintiffs lack standing to bring a civil action under RICO, *see e.g., Landmark Savings & Loan, supra*, 527 F.Supp. at 209, and Count VII will be dismissed for failure to state a claim upon which relief may be granted.

ACCORDINGLY, the COMPLAINT is hereby DISMISSED WITH LEAVE TO AMEND within twenty days. Counts I, II, III, IV, XII, XIII and XVIII are dismissed for failure to comply with Rule 9(b); Counts I and II are dismissed without leave to amend for failure to state a claim upon which relief may be granted; and Count VII is also dismissed pursuant to Rule 12(b)(6), but with leave to amend. The

remaining counts, all based on state law causes of action, are dismissed for lack of pendent jurisdiction.

SO ORDERED.