## BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, et al.

### v.

## TOUCHE ROSS & CO., Certified Public Accountants, et al.

### Civ. No. C83–2794.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 25, 1985.

Samuel J. Zusmann, Jr., Robert W. Patrick, Jesse H. Austin III, Atlanta, Ga., for Bank of America National Trust & Savings Association, Rhode Island Hospital Trust National Bank, NCNB National Bank of North Carolina, Crocker National Bank and American Express International Banking Corp.

Thomas B. Metzloff, Atlanta, Ga., for Touche Ross & Co.

Timothy Askew, Jr., Kevin B. Getzendanner, Atlanta, Ga., for Fredrick Blank, Louie

Hansberger, Robert E. Minnear, Patrick G. Rooney and Edward P. Fitzgerald.

## ORDER

### ORINDA D. EVANS, District Judge.

This case is before the court on Defendants' motion for dismissal of Plaintiffs' first amended and recast complaint under Federal Rule of Civil Procedure 12(b)(6) and for failure to comply with Rule 9(b) and on Defendants' motion for oral argument.

Plaintiffs in this case are five banks ("the banks") who provided financing for International Horizons, Inc., a manufacturer of language teaching systems. In 1979, the banks extended $60,000,000 in credit to International Horizons. As a prerequisite to execution of the credit agreement, International Horizons was required to provide audited financial statements and unqualified reports to the banks. Defendant Touche Ross, a firm of certified public accounts, was employed by International Horizons to prepare these statements and reports.

International Horizons filed for bankruptcy in early 1981. In October 1982, the banks entered into a settlement with International Horizons of their bankruptcy litigation. As part of that settlement, the banks released International Horizons from any claims or potential liability resulting from the financing agreement. After settlement, the banks were left with a loss of approximately 16.7 million dollars in unpaid loans and legal expenses.

In December, 1983, the banks filed this suit against Touche Ross and a number of the firm's partners and employees ("the accountants"), seeking to recover treble the banks' stated losses. The accountants now move for dismissal of the complaint, as amended, for failure to state a claim.

The banks contend that the accountants violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, by engaging in a pattern of racketeering activity (multiple acts of wire and mail fraud related to the sending of false financial information) calculated to induce the banks to loan money to International Horizons.

In count one, the banks charge that the pattern of racketeering activity, *i.e.*, the acts of wire and mail fraud, injured them because they were deceived into extending sixty million dollars in financing of which 16.7 million remains unpaid.

In count two, the banks charge that the accountants conspired with International Horizons to undertake the pattern of racketeering activity described in count one, causing a loss of 16.7 million dollars.

Both counts are premised upon alleged violation of § 1962(c) of RICO. This is a criminal statute which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The complaint identifies International Horizons, Inc. as the "enterprise" for purposes of § 1962(c). As stated, the pattern of racketeering activity is alleged to consist of multiple acts of mail fraud and wire fraud. Count two is further based on § 1962(d) of RICO which provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

The basis for the banks' treble damages claims in both counts lies in § 1964(c) of RICO which provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The accountants set forth five grounds for dismissal of the amended complaint: (1)

that the banks have not met the standing requirements adopted by this court in *Morosani v. First National Bank of Atlanta*, 581 F.Supp. 945 (N.D.Ga.1984); (2) that the accountants have not been found guilty of the crimes charged as required by the Second Circuit in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2d Cir.1984); (3) that no unique RICO injury or "racketeering enterprise injury" has been shown; and (4) that the banks have not alleged sufficient facts establishing participation by the accountants in the conduct of International Horizons' affairs. On each of these grounds, the accountants urge dismissal of the banks' complaint for failure to state a claim. F.R.Civ.P. 12(b)(6). Finally, they contend that the complaint violates Federal Rule of Civil Procedure 9(b) in that it does not plead the elements of the RICO and fraud violations with sufficient particularity. Because the accountants' first argument is meritorious, the court will not address the other arguments.

In the last several years a spate of treble damage suits based on claimed violation of § 1962(c) have resulted in numerous, disparate interpretations of that section.[1] To date, the United States Supreme Court has not interpreted § 1962(c) in a civil context,[2] and neither has the United States Court of Appeals for the Eleventh Circuit.[3]

At this point, it would serve no useful purpose to discuss all of the possible meanings of § 1962(c) or to undertake analysis of conflicting district court and non-binding appellate decisions. In *Morosani v. First National Bank of Atlanta*, 581 F.Supp. 945 (N.D.Ga.1984), this court interpreted § 1962(c) in light of available authority. There having been no controlling interpretations of § 1962(c) rendered in the meantime, the court elects to incorporate in this order the principles discussed in *Morosani* and to apply these principles to the issues presented herein.

As more fully set forth in *Morosani*, treble damage suits under § 1964(c) based on a violation of § 1962(c) may arise in two different factual settings. These two factual settings are identified by looking to the particular social harms the legislation explicitly seeks to address, plus the requirement that plaintiffs' injury link up with a recognized purpose served by the criminal statute.

In the first factual setting, the "person"[4] referred to in § 1962(c) (who is the racketeer/defendant in the civil RICO action) manipulates the affairs of the enterprise by committing multiple criminal acts, *i.e.*, a pattern of racketeering activity. These criminal acts have primary impact on the enterprise. However, the crimes have collateral impact—adverse economic impact—on others. These "others" are the civil RICO plaintiffs. The social harm is collateral economic harm flowing from unlawful manipulation of the enterprise's af-

---

1. *See, e.g., Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2d Cir.1984) (criminal conviction is prerequisite to civil RICO claim); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272 (7th Cir.1983) (no criminal conviction required); *Haroco v. American National Bank*, 747 F.2d 384 (7th Cir.1984) (civil RICO plaintiff need not allege or prove separate racketeering injury); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984) (civil RICO cause of action requires distinct RICO injury); *Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982) ("enterprise" must be distinct from culpable "person").

2. The Supreme Court has decided only two cases based on the RICO statute, both criminal: *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), and *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

3. The Eleventh Circuit has only considered one civil RICO matter, which was an interlocutory appeal in *Morosani.* The Court of Appeals held that the district court had improperly dismissed the complaint on the ground that the practice complained of was not "a recognized form of criminal activity." *Morosani v. First National Bank of Atlanta*, 703 F.2d 1220 (11th Cir.1983). The Eleventh Circuit has decided a number of criminal RICO cases, including *United States v. Hartley*, 678 F.2d 961 (1982); *United States v. Cagnina*, 697 F.2d 915 (1983); *United States v. Carter*, 721 F.2d 1514 (1984); *United States v. Zielie*, 734 F.2d 1447 (1984).

4. The terms "person," "enterprise," "pattern of racketeering activity," are all terms of art defined in RICO. *See* 18 U.S.C. § 1961(3), (4) and (5).

fairs. This class of cases is what Congress had in mind when it referred, in the Congressional Statement of Findings and Purpose, Pub.L. No. 91–452, 84 Stat. 922 (1970), to organized crime's propensity to "weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition...." It is a class of cases where plaintiff's injury is a consequence of the enterprise's being "racketeer influenced."

In the second class of cases, the "person" referred to in § 1962(c), *i.e.*, the racketeer/defendant is one of those responsible for running the "enterprise."[5] In this instance the enterprise is a corrupt, or criminal, enterprise. The enterprise undertakes a pattern of racketeering activity, *i.e.*, a pattern of criminal acts, which are directed at third party victims. The third party victims are the civil RICO plaintiffs. In this instance, the social harm addressed is the enhancement of power which presumptively occurs when multiple criminal acts are committed by a corrupt enterprise.

In both classes of cases involved in § 1962(c), the unique nature of the social evils described justifies making such conduct the basis of a separate, distinct crime.[6]

The banks' complaint herein does not set out the elements of a civil cause of action based on violation of § 1962(c). The complaint does not allege a course of conduct that fits within either the first or second class of cases described herein. Instead, it is a hybrid form. Thus, the banks' complaint does not fall within the first class of cases discussed because they are not claiming injury collateral to International Horizons' status as a racketeer influenced organization. On the contrary, they are alleging direct injury as the victims of criminal acts.

Neither are the banks alleging that they were the victims of a corrupt criminal enterprise directed by the accountants. The banks' complaint, like that described in *Morosani*, fails to allege that the accountants were directing the affairs of the enterprise, or that the enterprise was criminal. Therefore, the pattern of conduct described in the banks' complaint does not fit within the second class of cases either.

A civil RICO recovery based on the complaint's allegations would serve no RICO purpose. The essential proof at trial would merely duplicate (but with a trebling of damages) that required in a common law fraud action. Although the banks' complaint ritualistically alleges that International Horizons is an "enterprise," it fails to allege that the claimed injury is connected with International Horizons' status as an alleged "racketeer influenced" or "corrupt" organization. Because the banks' broad interpretation of § 1962(c) renders it meaningless in relation to RICO's stated purposes, the court rejects such interpretation.

Accordingly, Defendants' motion to dismiss is GRANTED. Defendants' motion for oral argument is DENIED. The Clerk shall enter judgment in favor of Defendants, with costs on Plaintiffs.

---

**5.** The racketeer and the enterprise may be the same person or entity. *United States v. Hartley,* 678 F.2d 961, 988 (11th Cir.1982).

**6.** The court is not required herein to address what difficulties, if any, flow from the fact that § 1962(c) has dual objectives. Neither was the court's comment in *Morosani,* fn. 10, intended as a ruling on this matter, which was not before the court in *Morosani.*